All right, everybody's settled in. Mr. Frank. May it please the court, Theodore H. Frank of the Nonprofit Center for Class Action Fairness for appellant objector David Dugan. The district court committed reversible error when it approved the settlement without applying the applicable Trulia and Walgreens standard requiring that any supplemental disclosures in a zero dollar settlement be plainly material before the settlement be approved. And as a matter of law, as this court confined DeNovo in DeNovo review since it's the application of law to facts, the disclosures, the supplemental disclosures in this case were not material, much less plainly material. And you got a hurdle that you've got to get over first before you can get to the merits of the case, and that's whether he can be recognized as a party for purposes of appealing the judgment law. That's correct, Your Honor, and we have three responses to that. First of all, under the circuit's law in Rodriguez v. Bowen and Yowtz, his objection is timely because the court chose to accept it even though it was after the arbitrary deadline established by the court. And in cases like Rodriguez v. Bowen... Now that's a bit of an overstatement. If I heard you correctly, you said the court accepted it, the court addressed it, but the court never did say anything one way or the other, as I read the briefs, about whether they accepted or acknowledged his failure to comply with the time targets as harmless as far as the court is concerned. Well, certainly... In other words, the way I look at this case, it's not very favorable to you in the sense that the notice was untimely, and that it was untimely basically because he chose to go on a vacation, if I'm reading this right, and he either had a choice of staying and filing a timely objection, or he could go on his vacation. And life is made of choices. He chose, and consequences attend choices. And if the appellees had made a motion to strike and the court had The court did not say, this is not an objection I'm not going to consider. The court considered the objection and ruled on the objection. And I want to emphasize that the concern in Devlin was not, is an objection filed two weeks before the fairness hearing or one week before the fairness hearing. The concern in Devlin was, if we don't have this intervention requirement, the losers in Devlin argued, then there are going to be a million unnamed class members who can claim that they're parties and will bury the appellate courts in frivolous appeals. And all that the Supreme Court said is, you don't have to worry about that because the only thing that's going to come up are the people who actually object, who are class members. And they threw in the word timely, but the word timely was not a jurisdictional requirement, and it isn't in other situations, such as, again, Rodriguez v. Bowen is, I think, precisely on point because there, the deadline is established by the federal rules of civil procedure. You have to file your objections within 14 days if you disagree with a magistrate's the... This is a rule that's created by the Supreme Court, as a special exception to a non-party, non-innovator, having the right to appeal a judgment with respect to which he had no connection. He does have a connection because he's a class member who's in... Well, yeah, that does give him his connection. You're right about that, but that doesn't give him his connection as a party, and you have to be a party to appeal, and the Supreme Court says, well, we're going to cut out a very narrow exception. You don't have to be a party to a judgment. I mean, that's the way I read it. I disagree with that, and the Sixth Circuit disagrees with that. You disagree with my reading of it, or what? I'm sorry? You disagree with my reading... I disagree both with your reading of Devlin and with how other courts... What did the Supreme Court say in Devlin? The Supreme Court says we don't need to require this extra paperwork of intervention because objectors are affected by settlements, and we can consider them parties for purposes of appeal, and since the motion for intervention has to be granted anyway, there's no reason to have that additional requirement to establish them as parties for purposes of appeal, and Fidel versus Farley in the Sixth Circuit held the same thing with respect to a late filing objector, and in Robert F. Booth Trust versus Crowley, 687 F314, the Seventh Circuit took an objector who filed a late filed objection and moved to intervene and had the motion to intervention denied. Let me ask you whether equity has anything to do as to whether the late filing should be forgiven, and am I being unduly harsh on your client to say that he chose to go on a vacation instead of to tend to his business? Well, he didn't have time to gather together an objection material, and yes, he could have certainly. As the equities go, if we're going to talk technicalities versus technicalities, they, the entire class received a notice that was constitutionally deficient under Katrina Canal in that everybody got a notice that had the wrong deadline on it, and he got a notice that says your objections due on such and such a date he thought he couldn't make the deadline. But that was his, that was in his favor because the deadline was extended, not shortened, as a result of the mistake that the court made. And again, as the equities go, they suffered no prejudice. They had the opportunity to respond. They had the opportunity to file a motion to strike, which they did not file. As the equities go, they waived that under Fifth Circuit law. And as the equities go, we're talking about an inequitable settlement that adversely affects hundreds of thousands of people. And you would create a circuit split with Fidel versus Farley to say that this technicality of when the objection comes in affects standing under Devlin. It would contradict, and we have a fundamental problem here in that everybody in the class got late notice. But, I mean, the other thing that, I'm saying this to let you respond to it, and that is that the notice that the court sent out expressly said that if you fail to meet the timely objection, it will be a waiver of your right to appeal. In other words, expressly said that. Well, but then we have the problem that the notice, by the only evidence in the record, did not comply with the court's own preliminary approval order requiring that reasonably identifiable class members get notice within 14 business days. And that there were thousands of class members who got notice after the objection deadline, as well as the fact that the notice itself is constitutionally deficient under Fifth Circuit standards. And by the plaintiff's argument, they can avoid any objections and any appeals by just submitting a late notice to everybody failed to object within a time, and they don't have standing to appeal. And that seems to me inequitable and a misreading of Devlin. All right, assuming he's still in. Yes, sir. Yes, Your Honor. Assuming he's still in. Oh, okay. Assuming he's still in. Assuming he's still in, then we have the law being applied. There is no way that these supplemental disclosures could be found to be material, much less plainly material. And pressed with, the defendant acknowledges that there is no materiality in the supplemental disclosures. These are simply additional line items, as Baker Hughes calls them, to projections that were already provided to the shareholders, and that's at record 579 through 588 of additional projections of potential baseline, upside and downside cases for the combined entity. The additional line items, there would be no cause of action for suing because you didn't include those line items. They're not material, much less plainly material. This settlement could not be approved under the Walgreen and Trulia standard. It's there purely to benefit the plaintiff's attorneys at the expense of shareholders. And as the Seventh Circuit stated, these sorts of lawsuits are a racket, and court should step in to stop them. Well, it's not really our business. It seems like, I mean, I get the argument, but it seems like, you know, sort of a policy matter and advocacy vis-a-vis being able to do this or not in terms of the suits itself, but that's not really, you know, we're not here to send messages and advisory opinions and so forth. That's just not what we do. And so notwithstanding, I'm not saying you're asking us to do that, but I mean, I get the flavor reading the Seventh Circuit and all that kind of stuff, but at the end of the day, that's not what we're going to be looking to do one way or the other. It's just looking at this, he's either in or out, and then if he's in, you know, is it material or not, da-da-da-da-da-da. It just seems like a lot of energy going on down there, around there, in terms of the fairness act, is this a good thing for people to come in, file a suit, you know, get the money run, da-da-da-da-da-da-da. The beauties of this court is that you learn about stuff you never knew even went on. So reading this brief, you know, I'm like, really? But anyway, I suppose there's a whole career out there, right? Well, certainly there are firms that make their living bringing these sorts of suits, and it's a violation of Rule 23E. It's a violation of this circuit's precedent, and Katrina can have it. I guess maybe that's where my little piece was headed, and that seemed to me that the energy ought to be focused on if that, you know, a rule change, the Rule 23. I mean, to the advisory committees that deal with the rules, if it's sort of the panacea and so forth, and I'm not saying what is or not, but in the rule change deliberative process of the Judicial Conference, the civil rules and the standing rules, you know, deal with these kind of matters. This doesn't strike me in a case, you know, what a court to do to pronounce. So for my information, is this a matter that has been put to the rules committees pro and con in terms of this whole issue? No, Your Honor, because it's already there in the rules. Rule 23E requires... Is that like a lawyer saying, clearly, Your Honor, is that where it is? It's not clearly. It's the circuit's precedent in Katrina Canal that there actually has to be benefit to the class before you can approve a settlement, and there is no benefit here where there's no material disclosure, and not even no material disclosure, no preliminary material disclosure, which is the standard established by the Delaware Courts in Trulia and the Seventh Circuit in Walgreen. The court here did allow, I guess, at least substantial discovery, correct? I mean, to determine whether it was, in fact, a fair settlement, notwithstanding the fact that there was no benefit to the... There was no discovery about the fairness of the settlement. The discovery was after the settlement was reached, and it's called confirmatory discovery. It's to exaggerate their lodestar. Okay. What do you really think? I think it's a racket, and it violates the federal rules, and I think this court should not create a circuit split and permit it. Well, we got you on tape with that one. Okay. Thank you, Your Honor. If there are other questions, otherwise, I'll save my time for rebuttal. All right. Well, you've saved some rebuttal. Something tells me the other side is not going to agree with you, so when you come back on rebuttal... They don't agree with me. They don't agree with each other. Well, we'll see where we are. All right. Thank you, sir. All right. On behalf of Miles Shriner, Ms. Aron? Mr. Aron? Is that correct? Aron? Is that how you pronounce it? Shriner. Oh, Mr. Shriner. I'm sorry. I'm looking at the client name. I apologize. My apologies. All right. Here's the court. Miles Shriner, on behalf of the plaintiff, Isaac Aron, and the class, district court's final approval order should be affirmed for three reasons. Okay. Your client is... Isaac Aron. ...situated as one of... The main plaintiff, the lead plaintiff. He was appointed lead plaintiff by the district court. Gotcha. First, the settlement was fair under any standard that this court wishes to apply, because no matter how you cut it, projections showing a company's highest value are important to shareholders who must decide whether or not to sell their shares. Second, the objector lacks article 3 standing, as he has failed to articulate a concrete injury, in fact, as a result of the settlement. And third, the objector waived his right to appeal by failing to comply with the notices requirements, despite admitting that he received that notice weeks before the objection deadline. Now, the settlement has to be analyzed in the proper context and under an abuse of discretion standard. Plaintiff filed suit under Section 14A and Rule 14A9, which were intended to get shareholders material information before deciding how to vote on a significant corporate issue, and that's precisely what plaintiff got in this case. The upside case projections showing that Crestwood Midstream was more valuable than in this courtroom that has ever had to sell an asset, that a reasonable person wants to understand that asset's highest value. Judge Gilmour recognized just that. She recognized that the newly disclosed upside case projections showed Midstream's highest possible value. She found that they, quote, benefited the entire class. That conclusion was not an abuse of discretion. Now, the objector asked this court to abandon its holding in Katrina Canal that a settlement can be approved if it provides the class with some benefit or an adequate advantage. And he also asked this court to abandon the well-settled principle that a district court should not engage on a trial on the merits. Do you contend there was any benefit here for the class? Absolutely, Your Honor. What was the benefit for the class? It was the disclosure of the upside case projections, which showed that Midstream, the company being bought, was more valuable than was initially disclosed in the proxy statement that was mailed to the unit holders. The defendants withheld that information until we showed up. We filed a motion for a preliminary injunction. We pushed the case, and not until we did that, the defendants agreed to disclose that material information to shareholders. Was the difference in the value palpable, tangible, and expressible in terms of monetary figures? Absolutely, Your Honor, and we addressed that in our brief. Tell me about that. How much discrepancy was there between the say that the objection was untimely and the cases go over? I think that's right, Your Honor. That's a jurisdictional issue, and I think the court has certainly addressed that. Absolutely, Your Honor. I was going to get to that later, but I certainly... Okay, later is fine. Getting back to Judge Jolly's question, the EBITDA figures for Midstream, that's Earning Before Interest, Taxes, Depreciation, and Atomization, it's a key metric in valuing a shareholder's assets. The numbers were significantly higher under the upside case than the base case, which was initially disclosed. So absolutely, these numbers were significantly higher. They called into question the fairness of the exchange ratio, and we certainly believe that they were material to shareholders and benefited them. But I think the overlying question that this court needs to consider is whether it should just abandon its holding at Katrina Canal and adopt plainly material, truly a standard that the objector is advocating for. We have at least three reasons that we think this court should decline to do so. The first is that this court's uniform class action settlement standards, the Reed factors, and the Katrina Canal sum benefit standard work perfectly fine in the context of a Section 14a case, just as they do for all other types of class action settlements. Courts in this circuit have consistently applied those factors to all types of settlements, both monetary and non-monetary. This court did that in the Zapata case that we cite in our brief, and I see no reason to suddenly deviate from those standards here, because one out of 50,000 unit holders thinks that it's a good idea. The New York Appellate Division in the Verizon case, which we cite in our brief, reached that same conclusion just a few months ago when it said, with all due respect to Delaware, we have our own class action standards and they work perfectly fine, and we're not just going to abandon them. I think this court should reach the same conclusion here. The second issue with the plainly material standard is that it forces a district court to engage on a merits issue, which is materiality, which is really the linchpin to the 14a claim, and it forces the court to do that at the final approval hearing. Again, for decades, this court and every other circuit, for that matter, has said that it is not a district court's job at the final approval hearing to engage in a trial on the merits. If you adopt the standard, that's exactly what you're going to require the district court to do. You're also going to put the parties in a position where they cannot resolve these issues. The third reason that this court should decline to adopt the plainly material standard is that there's an inherent tension between that standard, which requires a court to, quote, find that it's not a close call that the supplemental information is material, and what the Supreme Court said in TSC, which is that materiality is inherently far from plain, and that reasonable minds can and often will differ on the issue. Quoting from TSC at 426 U.S. 448, the court wrote that materiality is not subject to determination with certainty. Doubts as to the critical nature of information misstated or omitted will be commonplace. It concluded that in view of the prophylactic purpose of the rule and the fact that the information sits in management's possession, any doubts of that materiality should be resolved in favor of disclosure, and if you adopt the plainly material standard, I think you're effectively going to foreclose cases from being resolved for the type of information that the Supreme Court in TSC said should be disclosed, and that's the information that's not plainly immaterial but may not be material to every person that considers it. I think it's also important to recognize that the Trulia's plainly material standard was a response to cases where plaintiffs allege a breach of the duty of loyalty, basically alleging that the board had engaged in some sort of nefarious conduct. And then a few weeks later, they would just settle that case for disclosures. It's a fundamentally different type of claim than a claim under Section 14A, which focuses on primarily equitable relief, getting the information to shareholders before they have to vote, and I think in light of the foregoing, the plainly material standard does not make practical sense in the context of a Section 14A case, but if the court is compelled to elaborate on how its Katrina Canal some benefit standard works in the context of a 14A case, then I think a holding that plainly immaterial information cannot support such a settlement fits comfortably within the current Reed-Katrina Canal framework. But again, I see absolutely no reason for this court to just abandon decades of precedent because one unit holder thinks it's a good idea. Even if the court disagrees with me, though, and it wishes to adopt that standard, that standard was met here as the cases we cite in our brief recognize a reasonable shareholder would have wanted to independently evaluate management's internal financial projections to see if the company was being fairly valued. In fact, the Trulia court itself recognized the same exact thing. It stated that projections are considered important because they contain unique insights into the value of the company that cannot be obtained elsewhere. The very case he hangs his hat on supports this settlement. What your counsel opposite argues vehemently about the judge's opinion in the case. I couldn't find it. As do I, Your Honor. Two points on Walgreen. And first, with all due respect to the Seventh Circuit, I think it's a poorly reasoned opinion. If you look for the word standard of review in that opinion, you won't find it. The court just skipped over that whole issue. I think the court also conflates the definition of materiality. The case law from this court in Huddleston, the Second Circuit case we cite Folger Adam, make very clear that there's a subtle distinction between information that is outcome determinative, which would actually change how someone votes, and information that will assume actual significance in your mind, but at the end of the day will not change how you act. And it conflates that concept, and in my mind, it reaches an erroneous definition of materiality that is inconsistent with what the Supreme Court said in TSC, inconsistent with what this court said in Huddleston, and inconsistent with several other cases that we cite in our brief. So needless to say, we don't think that the standard should be adopted by this circuit. The other issue with the case is that plaintiffs there also filed a breach of fiduciary duty claim. I reviewed the complaint, and that touches on the point I just made, the distinction between a fiduciary duty claim and a 14A claim, which I want to turn to the jurisdictional issues. The first argument we raise on that is that the objector lacks Article 3 standing. I think the case law is very clear that he has to allege a concrete injury in fact as a result of this settlement. I've read his briefs multiple times. I've listened to his attorney speak for 15 minutes. The only harm I hear him articulate is the release of an unknown claim, and that doesn't constitute an injury in fact under how the Supreme Court defined that term in Clapper, where the court held that a threatened injury must be certainly impending to constitute an injury in fact, and that allegations of possible future injury are not sufficient. And I think the proper analysis requires this court to think of all the things that would need to occur for the release of an unknown claim to cause the objector injury. First, some currently unknown facts that could actually support a claim known under our law would have to exist. Now we looked for those facts. We took four depositions. We reviewed internal documents. We consulted with a valuation expert. We didn't find any facts to for a post-closed claim. Had we, we would have terminated the memorandum of understanding, which we had the express right to do. We would have pursued a claim for damages, just as my firm has done in other cases, but the facts just weren't here. I think time is also telling in this case because it's now been over two years since this transaction was announced. No other unit holder has come forward with a claim. So it's entirely speculative that any such claim exists or any facts to support a claim exist. Even if they did, he would have to somehow find out about them. I don't know how he would do that at this point in time. He would have to put those facts in a complaint. He would have to be able to litigate a case to the point where he could actually obtain a recovery. That is such a speculative and highly unlikely string of events. It just does not constitute an injury in fact, as the Supreme Court defined that term in Clapper. The only other harm that he vaguely refers to is an economic harm, but he hasn't suffered any because the attorney's fees in this case were paid by the defendants or their insurance carrier. They didn't come from the objector's pocket, and if they are altered in any way, they will not put a dime back in his pocket. And so I do not see how he has suffered any harm as a result of the fees either. And I'll turn to the waiver issue. The objector admits that he received the notice weeks before the objection deadline. It's also important to recognize that he was a practicing attorney, decades of experience. He admits he read the notice. He understood what notice required, but he chose to go on vacation instead. I think that tells you a little bit about how much of an injury he really feels he suffered as a result of the settlement. People that feel aggrieved don't just ignore notices to go on vacation. They act, especially lawyers that understand what they're reading. He also failed to include adequate proof of membership in the settlement class. He submitted his objection under penalty of perjury, but we don't believe that's sufficient under what this court held in FEDER, the electronic data systems, which is that the right to object to a settlement in a securities class action must rest on something more than a bare assertion of stock ownership, which is precisely what he made here. The FEDER court... I mean, did Duggan assume that someone else was going to take the lead in this? I have no idea, Your Honor. He just fell down. I mean, he had an important vacation to go on for two weeks, and obviously he was adamant about getting on with that. From my point of view, I mean, he had his priorities in order. I hope it was a nice vacation. And I'll briefly, with my time left, turn to the The notice was somehow untimely. Again, despite the fact that he admits receiving it weeks before the deadline, there's no indication whatsoever that any class member received that notice too late to object. The notice was mailed timely. The court's preliminary approval order required it to be mailed within 14 business days of entry. That deadline was met. 4,500 notices were mailed initially, not to mention all the notices that went out to the state's attorneys general. None of them had a problem with the settlement. The notice administrator continued to mail notices when it received requests from the brokerage houses within seven business days of that request. This notice procedure has been approved by every circuit court that has considered it. We cite to the Fidel V. Farley case from the Sixth Circuit. Let me ask you, you said, so this is the only, I guess I'd say, pending matter. Well, let me ask it this way. If we agreed with you or concluded that there's no standing, you know, we jettison the case and never get to the merits or any of the rest of it, assuming that, is this case over or what's the status of this? Are there other claims hanging out there on this or what? No, your honor, this case is over if this court decides to dismiss for lack of jurisdiction or approves the settlement on the merits. Either way, whether we dismiss on standing or even if we affirm, and I'm saying we are, but if we affirmed on the merits, this is over because there are not other claims or objectors hanging in the balance, so to speak. That's correct, your honor. Okay. I see my time is up and we thank the court for its time. All right. Thank you, sir. All right. Back to you, Mr. Frank. Oh, I'm sorry. Sorry. Sorry. Appreciate it. Mr. Kiven, I didn't mean to cut you off. I'm sorry. May it please the court. Brian Jividen on behalf of the defendant at police. The defendant settled this suit for the same reason that nearly all plaintiffs settle a lawsuit, the uncertainty and expense of litigation. The objector wants to undo this settlement and prevent future similar settlements in order to force the parties to adjudicate these issues through the adversarial process. This court should reject that attempt at engineering social policy under the guise of a class action objection. The context leading up to this settlement helps to explain why the content of the settlement was the optimal procedure for the defendants and plaintiffs to take. The defendants were subject to a pending motion for a temporary restraining order and the district court held a scheduling conference to determine whether or not that should be set for a hearing. At that hearing, they attempted to but were unsuccessful in convincing the court that a ultimately it was set for a few days later. At that point, defendants could go into a hearing and come out subject to a restraining order that would cause significant problems and even more costs for their shareholders in consummating this merger. So they worked amicably with plaintiffs to identify any information which the plaintiffs felt was material, disclosed it to investors, and also provided the plaintiffs an opportunity to perform confirmatory discovery in order to further vet the transaction and make sure there were no latent issues. The objector wants to do away with this amicable exchange and settlement in favor of forcing parties to litigate this issue before a judge in a very, very short time frame with little to no discovery. The only other alternative that the objector provides is a standard for settlement called... The objector does not concede that you have his motives properly articulated, though. True, Your Honor. The objector does disagree that we are not seeking his interest, that we're seeking the company's interest at his expense. But the plainly material standard that he suggests is an overcorrection, if anything, to that problem if there were a problem. One, the objector hasn't identified any sort of conflict that would create that problem. And two, the plainly material standard doesn't really address the benefits of the settlement to the shareholders. It only narrowly focuses on one particular aspect of the settlement, the disclosures at hand. It ignores all the confirmatory discovery that took place. It also isn't a settlement standard at all, but really is a confession of judgment. Defendants are required to prostrate themselves before a court and confess to the core element of securities fraud. No other type of class action requires that perverse prostration. For those reasons, we ask that this court affirm the judgment below. Thank you. Thank you. Now, back to you, Mr. Frank. Thank you, Your Honors. Aaron is arguing facts that he never raised below and that Dugan never had the opportunity to address. He's essentially making a motion to strike in the Fifth Circuit that he did not make in the district court. And had he said, this objection should be stricken because you went on vacation, Dugan could have responded and we could have had a factual determination by the district court, and then that factual determination could be addressed one way or the other, and maybe we would lose that, maybe we would win that. But they waived it. They never made the motion to strike, and that's what Yance says. Well, more to the point, let's focus on the injury or not. Rather than that piece of it. Thank you. So, go to the judgment. What's the injury? Dugan is a class member. Aaron is the class representative. They have certified a class saying that Aaron has the same injury as every other class member. So, if Dugan doesn't have an injury, then Aaron doesn't have an injury, and this whole case should be thrown out for lack of Article III standing and lack of jurisdiction. Dugan has the same standing that Aaron does. Or that any class member would have. Or that any other class member does. They argue that the benefit is this disclosure of the upside case, but the upside case was already disclosed. It's right there in the preliminary proxy in Record on Appeal 579 to 588, upside case, how upside it is, and the only thing that the supplemental disclosure adds is supporting data for why they said the upside case was valued as it was. But that's not a new disclosure. That's not a new material disclosure. It's a redundant disclosure, and it does not create a benefit for the class. The only benefit here is that there's no more litigation, but the only reason there's serving litigation. He says the disclosure is articulated in dollars and cents. But it was in 579 through 588 where they give the multiples. It's right there. There's an upside case explaining how it relates to the base case, and then the pro formas are given. And yes, there's additional line item detail, but that's never been held to be material. That's never been held to alter the total mix of information. And that's the standard on your TSC, the total mix. They make a lot of arguments why Walgreen doesn't apply, but Walgreen itself was a 1489 case. That's why it was in federal court. And two, the waiver in this settlement waives all the fiduciary claims. So if Aaron wants to bring a claim for a breach of fiduciary duty, he can't do it because it's been waived. So the very reason he says why the plainly material standard is applicable to those other cases is also applicable here. You have a settlement that waives the breach of fiduciary duty claim, the breach of loyalty claim, any claims relating to this merger. And that far sweeping waiver combined with the $0 settlement, and it didn't have to settle for $0. They could have given some money for the class and kept some money for themselves. This had a litigation value of $575,000, and the attorneys kept it all for themselves. I'm happy to answer any other questions. So if we dismiss the case or affirm on the merits, do you agree with counsel opposite that this case is over? No, because the notice was constitutionally inadequate. So I think any unit holder could bring a new suit. Well, I mean, that says could, but I'm talking about based on the facts and posture as existent now. This particular Aaron versus Preston. Monday at 1015, if we dismissed, not saying we are, but if we dismiss, or affirmed on the merits, is this case over? Is this the only claim of its sort that's out? This is the only one that is pending. A dismissal or an affirmance would create a circuit split, and certainly Dugan would have other remedies then. You're talking about circuit split as with Walgreen? Is that what you're talking about? Well, both with Walgreen, with Fidel, and I think it would be a contradiction of what this court held in Younts and Rodriguez. I think that may be a contradiction. What happened to the dissent in Walgreen? Do you know? It was never filed. It's been a year and three days since it was argued, and no dissent has been filed. I'm just curious. Just looking. All right. I figured if anybody knew, you would know. I argued it. I do know. All right. Thank you. All right, counsel. Thank you for both sides. An interesting case, to say the least. We will decide.